UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------X
In re:                                                                  Chapter 13

Franchesca A. Samatallee,                                 Case No. 17-43721-cec

                       Debtor.                        NOTICE OF MOTION
---------------------------------------------------------X

      **PLEASE TAKE NOTICE** that upon the annexed application of the Debtor, Franchesca A. Samatallee, the undersigned will move this Court before the honorable Carla E. Craig, U.S. Bankruptcy Judge, on August 17, 2017 at 4:00 p.m., or as soon thereafter as counsel can be heard, at the United States Bankruptcy Court for the Eastern District of New York, 271-C Cadman Plaza East, Courtroom 3529, Brooklyn, New York, for an order, pursuant to 11 USC 362 ( c)(3)(B), continuing the automatic stay against all creditors and parties in interest, and for such other and further relief as this court deems just and proper.

      **PLEASE TAKE FURTHER NOTICE**, that objections, if any, to the granting of the relief requested in this Motion, must be in writing and filed no later than 4:00 p.m on August 16, 2017.

DATED: July 31, 2017                     /s/ Sarah M. Keenan
                                                 SARAH M. KEENAN
                                                 SFERRAZZA & KEENAN, PLLC
                                                 Counsel for the Debtor
                                                 532 Broad Hollow Road, Suite 111
                                                 Melville, NY  11747
                                                 (631) 753-4400 Ext. 23

TO:    SEE ATTACHED LIST

Bank of America
DES-019-03-07
4060 Ogletown/Stanton Road
Newark, DE 19714

CBNA – Home Depot
P O Box 6497
Sioux Falls, SD 57117-6497

Chase Card
201 N. Walnut St. / DE1-1027
Wilmington, DE 19801

Discover Bank Discover Products
P O Box 3025
New Albany, OH 43054-3025

Nationstar Mortgage
P O Box 199111
Dallas, TX 75235

NYC Water Board
P O Box 11863
Newark, NJ 07101-8163

PHEAA
P O Box 8147
Harrisburg, PA 17105

Valley National Bank
c/o Cullen & Dykman
100 Quentin Roosevelt Blvd.
Garden City, NY 115530

Michael Macco, Esq.
Standing Chapter 13 Trustee
2950 Express Drive South
Islandia, NY 11749

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
In re:                                                      Chapter 13

Franchesca A. Samatallee,                        Case No. 17-43721-cec

                                Debtor.
-------------------------------------------------------------X

## APPLICATION IN SUPPORT OF
## MOTION TO EXTEND AUTOMATIC STAY

The Application of the debtor, Franchesca A. Samatallee ("Debtor"), by her counsel, Sferrazza & Keenan, PLLC, respectfully represents as follows:

1. The Debtor filed a petition for relief under Chapter 13 of the Bankruptcy Code on July 20, 2017 (the "Filing Date").

2. This is the Debtor's second bankruptcy case filed within the past year. A prior Chapter 13 case was filed on January 12, 2017 but was dismissed by order of this Court dated May 25, 2017 due to her failure provide the Chapter 13 Trustee with certain documentation.

3. The filing of the within Chapter 13 case only provides an automatic stay for a period of 30 days from the date of filing of the Chapter 13 petition. The automatic stay is set to expire on August 19, 2017 unless continued by Order of this Court.

4. The Debtor has filed the within Chapter 13 case in good faith and with the intention of fulfilling her financial obligations pursuant to the rules of this Court.

5. The Debtor's real property located at 108-14 Jamaica Avenue, Richmond Hill, NY 11418 was scheduled to be sold at a foreclosure sale scheduled for July 21,

1

2017.  The Debtor has a signed contract for the sale of the property which will pay the secured creditor, Valley National Bank ("VNB") in full.  A copy of the contract is attached as Exhibit A.

6.  VNB was provided with a copy of the contract and proof of the payment of a deposit by the buyer, but refused to postpone the sale.

7.  The Debtor's plan will provide for the sale of the real property and payment of VNB in full.  The Debtor's unsecured debt will be paid over the life of the Debtor's plan.

8.  By virtue of the foregoing, cause exists to continue the automatic stay against all creditors pursuant to 11 U.S.C. 362 (c)(3)(B).

9. No prior application for the relief sought herein has been made to this or any other court.

WHEREFORE, the Debtor respectfully requests this Court to enter an Order for the relief sought herein, together with such other and further relief as is just and proper.

Dated:  July 31, 2017
      Melville, NY.

      /s/ Sarah M. Keenan
      Sarah M. Keenan, Esq.
      Sferrazza & Keenan, PLLC
      Attorneys for Debtor
      532 Broadhollow Road
      Suite 111
      Melville, NY 11747
      (631) 753-4400 x 23

EXHIBIT A

Reorder Form No. 8068 (3/00)– Residential contract of sale 2-91

*Jointly prepared by the Real Property Section of the New York State Bar Association, the New York State Land Title Association, the Committee on Real Property Law of the Association of the Bar of the City of New York and the Committee on Real Property Law of the New York County Lawyers' Association.*

**Warning:** NO REPRESENTATION IS MADE THAT THIS FORM OR CONTRACT FOR THE SALE AND PURCHASE OF REAL ESTATE COMPLIES WITH SECTION 5-702 OF THE GENERAL OBLIGATIONS LAW ("PLAIN LANGUAGE").

CONSULT YOUR LAWYER BEFORE SIGNING THIS AGREEMENT

**NOTE: FIRE AND CASUALTY LOSSES AND CONDEMNATION.**
This contract form does not provide for what happens in the event of fire, or other casualty loss or condemnation before the title closing. Unless different provision is made in this contract, Section 5-1311 of the General Obligations Law will apply. One part of the law makes a Purchaser responsible for fire and casualty loss upon taking possession of the Premises before the title closing.

### Residential Contract of Sale

**Date:** CONTRACT OF SALE, made as of ~~APRIL~~ 5/12, 20 17

**Parties:** BETWEEN FRANCESCA SAMATALLEE
Address: 108-14 JAMAICA AVENUE, RICHMOND HILL, NEW YORK 11418
Social Security Number/Fed. I.D. No(s):

hereinafter called "SELLER", and YAN ZHEN CHEN AND XUAN ZHI XU

Address:
Social Security Number/Fed. I.D. No.(s):

hereinafter called "PURCHASER".

The parties hereby agree as follows:

**Premises:**
1. Seller shall sell and convey and Purchaser shall purchase the property, together with all buildings and improvements thereon (collectively the "Premises"), more fully described on a separate page marked "Schedule A", annexed hereto and made a part hereof and also known as:

Street Address: 108-14 JAMAICA AVENUE, RICHMOND HILL, NEW YORK 11418
Tax Map Designation:

Together with Seller's ownership and rights, if any, to land lying in the bed of any street or highway, opened or proposed, adjoining the Premises to the center line thereof, including any right of Seller to any unpaid award by reason of any taking by condemnation and/or for any damage to the Premises by reason of change of grade of any street or highway. Seller shall deliver at no additional cost to Purchaser, at Closing (as hereinafter defined), or thereafter, on demand, any documents that Purchaser may reasonably require for the conveyance of such title and the assignment and collection of such award or damages.

**Personal Property:**
2. This sale also includes all fixtures and articles of personal property now attached or appurtenant to the Premises, unless specifically excluded below. Seller represents and warrants that at Closing they will be paid for and owned by Seller, free and clear of all liens and encumbrances, except any existing mortgage to which this sale may be subject. They include, but are not limited to, plumbing, heating, lighting and cooking fixtures, bathroom and kitchen cabinets, mantels, door mirrors, switch plates and door hardware, venetian blinds, window treatments, shades, screens, awnings, storm windows, storm doors, window boxes, mail box, TV aerials, weather vane, flagpole, pumps, shrubbery, fencing, outdoor statuary, tool shed, dishwasher, washing machine, clothes dryer, garbage disposal unit, ~~range, oven~~, refrigerator, freezer, air conditioning equipment and installations, wall to wall carpeting and built-ins not excluded below (strike out inapplicable items).

ALL AS PRESENTLY EXISTS - IN "AS IS" CONDITION

Excluded from this sale are furniture and household furnishings and

**Purchase Price:**
3. The purchase price is

payable as follows:                                                                                                             $ 771,000

(a) on the signing of this contract, by Purchaser's check payable to the Escrowee (as hereinafter defined), subject to collection, the receipt of which is hereby acknowledged, to be held in escrow pursuant to paragraph 6 of this contract (the "Downpayment"):   $ 77,100

(b) by allowance for the principal amount unpaid on the existing mortgage on the date hereof, payment of which Purchaser shall assume by joinder in the deed:                                                                                                    $

(c) by a purchase money note and mortgage from Purchaser to Seller:                                                              $

(d) balance at Closing in accordance with paragraph 7:                                                                           $ 693,900

**Existing Mortgage:**
4. (*Delete if inapplicable*) If this sale is subject to an existing mortgage as indicated in paragraph 3(b) above:
(a) The premises shall be conveyed subject to the continuing lien of the existing mortgage, which is presently payable, with interest at the rate of          percent per annum, in monthly installments of $          which include principal, interest and escrow amounts, if any, and with any balance of principal being due and payable on
(b) To the extent that any required payments are made on the existing mortgage between the date hereof and Closing which reduce the unpaid principal amount thereof below the amount shown in paragraph 3(b), then the balance of the price payable at Closing under paragraph 3(d) shall be increased by the amount of the payments of principal. Seller represents and warrants that the amount shown in paragraph 3(b) is substantially correct and agrees that only payments required by the existing mortgage will be made between the date hereof and Closing.
(c) If there is a mortgagee escrow account, Seller shall assign it to Purchaser, if it can be assigned, and in that case Purchaser shall pay the amount in the escrow account to Seller at Closing.
(d) Seller shall deliver to Purchaser at Closing a certificate dated not more than 30 days before Closing signed by the holder of the existing mortgage, in form for recording, certifying the amount of the unpaid principal, the date to which interest has been paid and the amounts, if any, claimed to be unpaid for principal and interest, itemizing the same. Seller shall pay the fees for recording such certificate. If the holder of the existing mortgage is a bank or other institution as defined in Section 274-a of the Real Property Law ("Institutional Lender"), it may, instead of the certificate, furnish a letter signed by a duly authorized officer, employee or agent, dated not more than 30 days before Closing, containing the same information.
(e) Seller represents and warrants that (i) Seller has delivered to Purchaser true and complete copies of the existing mortgage, the note secured thereby and any extensions and modifications thereof, (ii) the existing mortgage is not now, and at the time of Closing will not be, in default, and (iii) the existing mortgage does not contain any provision that permits the holder of the mortgage to require its immediate payment in full or to change any other term thereof by reason of the sale or conveyance of the Premises.

**Purchase Money Mortgage:**
5. (*Delete if inapplicable*) If there is to be a purchase money mortgage as indicated in paragraph 3(c) above:
(a) The purchase money note and mortgage shall be drawn by the attorney for Seller in the form attached or, if not, in the standard form adopted by the New York State Land Title Association. Purchaser shall pay at Closing the mortgage recording tax, recording fees and the attorney's fees in the amount of $          for its preparation.
(b) The purchase money note and mortgage shall also provide that it is subject and subordinate to the lien of the existing mortgage and any extensions, modifications, replacements or consolidations of the existing mortgage, provided that (i) the interest rate thereof shall not be greater than          percent per annum and the total debt service thereunder shall not be greater than $          per annum, and (ii) if the principal amount thereof shall exceed the amount of principal owing and unpaid on the existing mortgage at the time of placing such new mortgage or consolidated mortgage, the excess be paid to the holder of such purchase money mortgage in reduction of the principal thereof. The purchase money mortgage shall also provide that such payment to the holder thereof shall not alter or affect the regular installments, if any, of principal payable thereunder and that the holder thereof will, on demand and without charge therefor, execute, acknowledge and deliver any agreement or agreements further to effectuate such subordination.

**Downpayment in Escrow:**
6. (a) Sellers' attorney ("Escrowee") shall hold the Downpayment for Seller's account in escrow in a segregated bank account at CHASE, FOREST HILLS, NEW YORK
until Closing or sooner termination of this contract and shall pay over or apply the Downpayment in accordance with the terms of this paragraph. Escrowee shall (not) (*Delete if inapplicable*) hold the Downpayment in an interest-bearing account for the benefit of the parties. If interest is held for the benefit of the parties, it shall be paid to the party entitled to the Downpayment and the party receiving the interest shall pay any income taxes thereon. If interest is not held for the benefit of the parties, the Downpayment shall be place in an IOLA account or as otherwise permitted or required by law. The Social Security or Federal Identification numbers of the parties shall be furnished to Escrowee upon request. At Closing, the Downpayment

shall be paid by Escrowee to Seller. If for any reason Closing does not occur and either party gives Notice (as defined in paragraph 25) to Escrowee demanding payment of the Downpayment, Escrowee shall give prompt Notice to the other party of such demand. If Escrowee does not receive Notice of objection from such other party to the proposed payment within 10 business days after the giving of such Notice, Escrowee is hereby authorized and directed to make such payment. If Escrowee does receive such Notice of objection within such 10 day period or if for any other reason Escrowee in good faith shall elect not to make such payment, Escrowee shall continue to hold such amount until otherwise directed by Notice from the parties to this contract or a final, nonappealable judgment, order or decree of a court. However, Escrowee shall have the right at any time to deposit the Downpayment and the interest thereon with the clerk of a court in the county in which the Premises are located and shall give Notice of such deposit to Seller and Purchaser. Upon such deposit or other disbursement in accordance with the terms of this paragraph, Escrowee shall be relieved and discharged of all further obligations and responsibilities hereunder.

(b) This parties acknowledge that, although Escrowee is holding the Downpayment for Seller's account, for all other purposes Escrowee is acting solely as a stakeholder at their request and for their convenience and that Escrowee shall not be liable to either party for any act or omission on its part unless taken or suffered in bad faith or in willful disregard of this contract or involving gross negligence on the part of Escrowee. Seller and Purchaser jointly and severally agree to defend, indemnify and hold Escrowee harmless from and against all costs, claims and expenses (including reasonable attorney's fees) incurred in connection with the performance of Escrowee's duties hereunder, except with respect to actions or omissions taken or suffered by Escrowee in bad faith or in willful disregard of this contract or involving gross negligence on the part of Escrowee.

(c) Escrowee may act or refrain from acting in respect of any matter referred to herein in full reliance upon and with the advice of counsel which may be selected by it (including any member of its firm) and shall be fully protected in so acting or refraining from action upon the advice of such counsel.

(d) Escrowee acknowledges receipt of the Downpayment by check subject to collection and Escrowee's agreement to the provision of this paragraph by signing in the place indicated on the signature page of this contract.

(e) Escrowee or any member of its firm shall be permitted to act as counsel for Seller in any dispute as to the disbursement of the Downpayment or any other dispute between the parties whether or not Escrowee is in possession of the Downpayment and continues to act as Escrowee.

**Acceptable Funds:**

7. All money payable under this contract, unless otherwise specified, shall be paid by:
   (a) Cash, but not over $1,000.00;
   (b) Good certified check of Purchaser drawn on or official check issued by any bank, savings bank, trust company or savings and loan association having a banking office in the State of New York, unendorsed and payable to the order of Seller, or as Seller may otherwise direct upon not less than 3 business days notice (by telephone or otherwise) to Purchaser;
   (c) As to money other than the purchase price payable to Seller at Closing, uncertified check of Purchaser up to the amount of $ 500 : and
   (d) As otherwise agreed to in writing by Seller or Seller's attorney.

**Mortgage Contingency:**

8. (Delete if inapplicable) The obligations of Purchaser hereunder are conditional upon issuance on or before ~~MAY 19~~ *45 days from date of receipt of a fully exec. CONTRA* , 2017 (the "Commitment Date") of a written commitment from any Institutional Lender pursuant to which such Institutional Lender agrees to make a first mortgage loan, other than a VA, FHA or other governmentally insured loan, to Purchaser, at Purchaser's sole cost and expense, of $ ~~462,250~~ 539,000 or such lesser sum as Purchaser shall be willing to accept, at the prevailing fixed rate of interest not to exceed PREVAILING or initial adjustable rate of interest not to exceed PREVAILING for a term of at least 15/30 years and on other customary commitment terms, whether or not conditional upon any factors other than an appraisal satisfactory to the Institutional Lender. Purchaser shall (a) make prompt application to an Institutional Lender for such mortgage loan, (b) furnish accurate and complete information regarding Purchaser and members of Purchaser's family, as required, (c) pay all fees, points and charges required in connection with such application and loan, (d) pursue such application with diligence, (e) cooperate in good faith with such Institutional Lender to obtain such commitment and (f) promptly give Notice to Seller of the name and address of each Institutional Lender to which Purchaser has made such application. Purchaser shall comply with all requirements of such commitment (or of any other commitment accepted by Purchaser) and shall furnish Seller with a copy thereof promptly after receipt thereof. If such commitment is not issued on or before the Commitment Date, then, unless Purchaser has accepted a commitment that does not comply with the requirements set forth above, Purchaser may cancel this contract by giving Notice to Seller within 5 business days after the Commitment Date, in which case this contract shall be deemed cancelled and thereafter neither party shall have any further rights against, or obligations or liabilities to, the other by reason of this contract, except that the Downpayment shall be promptly refunded to Purchaser and except as set forth in paragraph 27. If Purchaser fails to give notice of cancellation or if Purchaser shall accept a commitment that does not comply with the terms set forth above, then Purchaser shall be deemed to have waived Purchaser's right to cancel this contract and to receive a refund of the Downpayment by reason of the contingency contained in this paragraph.

**Permitted Exceptions:**

9. The Premises are sold and shall be conveyed subject to:
   (a) Zoning and subdivision laws and regulations, and landmark, historic or wetlands designation, provided that they are not violated by the existing buildings and improvements erected on the property or their use;
   (b) Consents for the erection of any structures on, under or above any streets on which the Premises abut;
   (c) Encroachment of stoops, areas, cellar steps, trim and cornices, if any, upon any street or highway;
   (d) Real estate taxes that are a lien, but are not yet due and payable; and
   (e) The other matters, if any, including a survey exception, set forth in a Rider attached.

**Governmental Violations and Orders:**

10. (a) Seller shall comply with all notes or notices of violations of law or municipal ordinances, orders or requirements noted or issued as of the date hereof by any governmental department having authority as to lands, housing, buildings, fire, health, environmental and labor conditions affecting the Premises. The Premises shall be conveyed free of them at Closing. Seller shall furnish Purchaser with any authorizations necessary to make the searches that could disclose these matters.
    (b) (Delete if inapplicable) All obligations affecting the Premises pursuant to the Administrative Code of the City of New York incurred prior to Closing and payable in money shall be discharged by Seller at or prior to Closing.

**Seller's Representations:**

11. (a) Seller represents and warrants to Purchaser that:
    (i) The Premises abut or have a right of access to a public road;
    (ii) Seller is the sole owner of the Premises and has the full right, power and authority to sell, convey and transfer the same in accordance with the terms of this contract;
    (iii) Seller is not a "foreign person", as that term is defined for purposes of the Foreign Investment in Real Property Tax Act, Internal Revenue Code ("IRC") Section 1445, as amended, and the regulations promulgated thereunder (Collectively "FIRPTA");
    (iv) The Premises are not affected by any exemptions or abatements of taxes; and
    (v) Seller has been known by no other name for the past ten years, except:

    (b) Seller covenants and warrants that all of the representations and warranties set forth in this contract shall be true and correct at Closing.
    (c) Except as otherwise expressly set forth in this contract, none of Seller's convenants, representations, warranties or other obligations contained in this contract shall survive Closing.

**Condition of Property:**

12. Purchaser acknowledges and represents that Purchaser if fully aware of the physical condition and state of repair of the Premises and of all other property included in this sale, based on Purchaser's own inspection and investigation thereof, and that Purchaser is entering into this contract based solely upon such inspection and investigation and not upon any information, data, statements or representations, written or oral, as to the physical condition, state of repair, use, cost of operation or any other matter related to the Premises or the other property included in the sale, given or made by Seller or its representatives, and shall accept the same "as is" in present condition and state of repair, subject to reasonable use, wear, tear and natural deterioration between the date hereof and the date of Closing (except as otherwise set forth in paragraph 16(f)), without any reduction in the purchase price or claim of any kind for any change in such condition by reason thereof subsequent to the date of this contract. Purchaser and its authorized representatives shall have the right, at reasonable times and upon reasonable notice (by telephone or otherwise) to Seller, to inspect the Premises before Closing.

**Insurable Title:**

13. Seller shall give and Purchaser shall accept such title as ANY REPUTABLE NEW YORK STATE TITLE COMPANY

shall be willing to approve and insure in accordance with its standard form of title policy approved by the New York State Insurance Department, subject only to the matters provided for in this contract.

**Closing, Deed and Title:**

14. (a) "Closing" means the settlement of the obligations of Seller and Purchaser to each other under this contract, including the payment of the purchase price to Seller, and the delivery to Purchaser of a BARGAIN AND SALE DEED AGAINST GRANTOR'S ACTS

deed in proper statutory short form for record, duly executed and acknowledged, so as to convey to Purchaser fee simple title to the Premises, free of all encumbrances, except as otherwise herein stated. The deed shall contain a covenant by Seller as required by subd. 5 of Section 13 of the Lien Law.

(b) If Seller is a corporation, it shall deliver to Purchaser at the time of Closing (i) a resolution of its Board of Directors authorizing the sale and delivery of the deed, and (ii) a certificate by the Secretary or Assistant Secretary of the corporation certifying such resolution and setting forth facts showing that the transfer is in conformity with the requirements of Section 909 of the Business Corporation Law. The deed in such case shall contain a recital sufficient to establish compliance with that Section.

**Closing Date and Place:**

15. Closing shall take place at the office of SELLER'S ATTORNEY

*60 days from the date of purchaser's receipt of 2 fully executed contracts*

at 10:00 o'clock on OR ABOUT ~~8/16~~ 20 17 or, upon reasonable notice (by telephone or otherwise) by Purchaser, at the office of PURCHASER'S LENDING INSTITUTION

**Conditions to Closing:**

*\* one store w/ one family or one religious center & one family*

16. This contract and Purchaser's obligation to purchase the Premises are also subject to and conditioned upon the fulfillment of the following conditions precedent:
    (a) The accuracy, as of the date of Closing, of the representations and warranties of Seller made in this contract.
    (b) The delivery by Seller to Purchaser of a valid and subsisting Certificate of Occupancy or other required certificate of compliance, or evidence that none was required, covering the building(s) and all of the other improvements located on the property authorizing their uses as a MIXED USE \* family dwelling at the date of Closing.
    (c) The delivery by Seller to Purchaser of a duly executed and sworn affidavit (in form prescribed by law) claiming exemption of the sale contemplated hereby, if such be the case, under Article 31-B of the Tax Law of the State of New York and the Regulations promulgated thereunder, as the same may be amended from time to time (collectively the "Gains Tax Law"); or if such sale shall not be exempt under the Gains Tax Law, Seller and Purchaser agree to comply in a timely manner with the requirements of the Gains Tax Law and, at Closing, Seller shall deliver to Purchaser (i) an official return showing no tax due, or (ii) an official return accompanied by a certified or official bank check drawn on a New York State banking institution payable to the order of the New York State Department of Taxation and Finance in the amount of the tax shown to be due thereon. Seller shall (x) pay promptly any additional tax that may become due under the Gains Tax Law, together with interest and penalties thereon, if any, which may be assessed or become due after Closing, and/or execute any other documents that may be required in respect thereof, and (y) indemnify, defend and save Purchaser harmless from and against any of the foregoing and any damage, liability, cost or expense (including reasonable attorney's fees) which may be suffered or incurred by Purchaser by reason of the nonpayment thereof. The provisions of this subparagraph (c) shall survive Closing.
    (d) The delivery by Seller to Purchaser of a certification stating that Seller is not a foreign person, which certification shall be in the form then required by FIRPTA. If Seller fails to deliver the aforesaid certification or if Purchaser is not entitled under FIRPTA to rely on such certification, Purchaser shall deduct and withhold from the purchase price a sum equal to 10% thereof (or any lesser amount permitted by law) and shall at Closing remit the withheld amount with the required forms to the Internal Revenue Service.
    (e) The delivery of the Premises and all building(s) and improvements comprising a part thereof in broom clean condition, vacant and free of leases or tenancies, together with keys to the Premises.
    (f) All plumbing (including water supply and septic systems, if any), heating and air conditioning, if any, electrical and mechanical systems, equipment and machinery in the building(s) located on the property and all appliances which are included in this sale being in working order as of the date of Closing.
    (g) If the Premises are a one or two family house, delivery by the parties at Closing of affidavits in compliance with state and local law requirements to the effect that there is installed in the Premises a smoke detecting alarm device or devices.
    (h) The delivery by the parties of any other affidavits required as a condition of recording the deed.

**Deed Transfer and Recording Taxes:**

17. At Closing, certified or official bank checks payable to the order of the appropriate State, City or County officer in the amount of any applicable transfer and/or recording tax payable by reason of the delivery or recording of the deed or mortgage, if any, shall be delivered by the party required by law or by this contract to pay such transfer and/or recording tax, together with any required tax returns duly executed and sworn to, and such party shall cause any such checks and returns to be delivered to the appropriate officer promptly after Closing. The obligation to pay any additional tax or deficiency and any interest or penalties thereon shall survive Closing.

**Apportionments and Other Adjustments; Water Meter and Installment Assessments:**

18. (a) To the extent applicable, the following shall be apportioned as of midnight of the day before the day of Closing:
    (i) Taxes, water charges and sewer rents, on the basis of the fiscal period for which assessed; (ii) fuel; (iii) interest on the existing mortgage; (iv) premiums on existing transferable insurance policies and renewals of those expiring prior to Closing; (v) vault charges; (vi) rents as and when collected.
    (b) If Closing shall occur before a new tax rate is fixed, the apportionment of taxes shall be upon the basis of the tax rate for the immediately proceeding fiscal period applied to that latest assessed valuation.
    (c) If there is a water meter on the Premises, Seller shall furnish a reading to a date not more than 30 days before Closing and the unfixed meter charge and sewer rent, if any, shall be apportioned on the basis of such last reading.
    (d) If at the date of Closing the Premises are affected by an assessment which is or may become payable in annual installments, and the first installment is then a lien, or has been paid, then for the purposes of this contract all the unpaid installments shall be considered due and shall be paid by Seller at or prior to Closing.
    (e) Any errors or omissions in computing apportionments or other adjustments at closing shall be corrected within a reasonable time following Closing. This subparagraph shall survive Closing.

**Allowance for Unpaid Taxes, etc.:**

19. Seller has the option to credit Purchaser as an adjustment to the purchase price with the amount of any unpaid taxes, assessments, water charges and sewer rents, together with any interest and penalties thereon to a date not less that five business days after closing, provided that official bills therefor computed to said date are produced at Closing.

**Use of Purchase Price to Remove Encumbrances:**

20. If at Closing there are other liens or encumbrances that Seller is obligated to pay or discharge, Seller may use any portion of the cash balance of the purchase price to pay or discharge them, provided Seller shall simultaneously deliver to Purchaser at Closing instruments in recordable form and sufficient to satisfy such liens or encumbrances of record, together with the cost of recording or filing said instruments. As an alternative Seller may deposit sufficient monies with the title insurance company employed by Purchaser acceptable to and required by it to assure their discharge, but only if the title insurance company will insure Purchaser's title clear of the matters or insure against their enforcement out of the Premises and will insure Purchaser's Institutional Lender clear of such matters. Upon notice (by telephone or otherwise), given not less than 3 business days before Closing, Purchaser shall provide separate certified or official bank checks as requested to assist in clearing up these matters.

**Title Examination; Seller's Inability to Convey; Limitations of Liability:**

21. (a) Purchaser shall order an examination of title in respect of the Premises from a title company licensed or authorized to issue title insurance by the New York State Insurance Department or any agent for such title company promptly after the execution of this contract or, if this contract is subject to the mortgage contingency set forth in paragraph 8, after a mortgage commitment has been accepted by Purchaser. Purchaser shall cause a copy of the title report and of any additions thereto to be delivered to the attorney(s) for Seller promptly after receipt thereof.
    (b) (i) If at the date of Closing Seller is unable to transfer title to Purchaser in accordance with this contract, or Purchaser has other valid grounds for refusing to close, whether by reason of liens, encumbrances or other objections to title or otherwise (herein collectively called "Defects"), other than those subject to which Purchaser is obligated to accept title hereunder or which Purchaser may have waived and other that those which Seller has herein expressly agreed to remove, remedy or discharge and if Purchaser shall be unwilling to waive the same and to close title without abatement of the purchase price, then except as hereinafter set forth, Seller shall have the right, at Seller's sole election, either to take such action as Seller may deem advisable to remove, remedy, discharge or comply with such Defects or to cancel this contract; (ii) if Seller elects to take action to remove, remedy or comply with such Defects, Seller shall be entitled from time to time, upon Notice to Purchaser, to adjourn the date for Closing hereunder for a period or periods not exceeding 60 days in the aggregate (but not extending beyond the date upon which Purchaser's mortgage commitment, if any, shall expire), and the date for Closing shall be adjourned to a date specified by Seller not beyond such period. If for any reason whatsoever, Seller shall not have succeeding in removing, remedying or complying with such Defects at the expiration of such adjournment(s) and if Purchaser shall still be unwilling to waive the same and to close title without abatement of the purchase price, then either party may cancel this contract by Notice to the other given within 10 days after such adjourned date; (iii) notwithstanding the foregoing, the existing mortgage (unless this sale is subject to the same) and any matter created by Seller after the date hereof shall be released, discharged or otherwise cured by Seller at or prior to Closing.
    (c) If this contract is cancelled pursuant to its terms, other than as a result of Purchaser's default, this contract shall terminate and come to an end, and neither party shall have any further rights, obligations or liabilities against or to the other hereunder or otherwise, except that: (i) Seller shall promptly refund or cause the Escrowee to refund the Downpayment to Purchaser and, unless cancelled as a result of Purchaser's default or pursuant to paragraph 8, to reimburse Purchaser for the net cost of examination of title, including any appropriate additional charges related thereto, and the net cost, if actually paid or incurred by Purchaser, for updating the existing survey of the Premises or of a new survey, and (ii) the obligations under paragraph 27 shall survive the termination of this contract.

**Affidavit as to Judgments, Bankruptcies, etc.:**

22. If a title examination discloses judgements, bankruptcies or other returns against persons having names the same as or similar to that of Seller, Seller shall deliver an affidavit at Closing showing that they are not against Seller.

**Defaults and Remedies:**

23. (a) If Purchaser defaults hereunder, Seller's sole remedy shall be to receive and retain the Downpayment as liquidated damages, it being agreed that Seller's damages in case of Purchaser's default might be impossible to ascertain and that the Downpayment constitutes a fair and reasonable amount of damages under the circumstances and is not a penalty.
    (b) If Seller defaults hereunder, Purchaser shall have such remedies as Purchaser shall be entitled to at law or in equity, including, but not limited to, specific performance.

**Purchaser's Lien:** 24. All money paid on account of this contract, and the reasonable expenses of examination of title to the Premises and of any survey and survey inspection charges, are hereby made liens on the Premises, but such liens shall not continue after default by Purchaser under this contract.

**Notices:** 25. Any notice or other communication ("Notice") shall be in writing and either (a) sent by either of the parties hereto or by their respective attorneys who are hereby authorized to do so on their behalf or by the Escrowee, by registered or certified mail, postage prepaid, or

(b) delivered in person or by overnight courier, with receipt acknowledged, to the respective addresses given in this contract for the party and the Escrowee, to whom the Notice is to be given, or to such other address as such party or Escrowee shall hereafter designate by Notice given to the other party or parties and the Escrowee pursuant to this paragraph. Each Notice mailed shall be deemed given on the third business day following the date of mailing the same, except that any notice to Escrowee shall be deemed given only upon receipt by Escrowee and each Notice delivered in person or by overnight courier shall be deemed given when delivered.

**No Assignment:** 26. This contract may not be assigned by Purchaser without the prior written consent of Seller in each instance and any purported assignments(s) made without such consent shall be void.

**Broker:** 27. Seller and Purchaser each represents and warrants to other that it has not dealt with any broker in connection with this sale other than

PARKER STREET REALTY AND WINZONE REALTY INC.

("Broker") and Seller shall pay Broker any commission earned pursuant to a separate agreement between Seller and Broker. Seller and Purchaser shall indemnify and defend each other against any costs, claims and expenses, including reasonable attorney's fees, arising out of the breach on their respective parts of any representation or agreement contained in this paragraph. The provisions of this paragraph shall survive Closing or, if Closing does not occur, the termination of this contract.

**Miscellaneous:** 28. (a) All prior understandings, agreements, representations and warranties, oral or written, between Seller and Purchaser are merged in this contract, it completely expresses their full agreement and has been entered into after full investigation, neither party relying upon any statement made by anyone else that is not set forth in this contract.

(b) Neither this contract nor any provision thereof may be waived, changed or cancelled except in writing. This contract shall also apply to and bind the heirs, distributees, legal representatives, successors and permitted assigns of the of the respective parties. The parties hereby authorize their respective attorneys to agree in writing to any changes in dates and time periods provided for in this contract.

(c) Any singular work or term herein shall also be read as in the plural and the neuter shall include the masculine and feminine gender, whenever the sense of this contract may require it.

(d) The captions in this contract are for convenience of reference only and in no way define, limit or describe the scope of this contract and shall not be considered in the interpretation of this contract or any provision hereof.

(e) This contract shall not be binding to effective until duly executed and delivered by Seller and Purchaser.

(f) Seller and Purchaser shall comply with IRC reporting requirements, if applicable. This subparagraph shall survive Closing.

(g) Each party shall, at any time and form time to time, execute, acknowledge where appropriate and deliver such further instruments and documents and take such other action as may be reasonable requested by the other in order to carry out the intent and purpose of this contract. This subparagraph shall survive Closing.

(h) This contract is intended for the exclusive benefit of the parties hereto and, except as otherwise expressly provided herein, shall not be for the benefit of, and shall not create any rights in, or be enforceable by, and other person or entity.

IN WITNESS WHEREOF, this contract has been duly executed by the parties hereto.

_[signature]_     Seller     ✓ YANZHEN CHEN     Purchaser
FRANCESCA SAMATALLEE      YAN ZHEN CHEN

                    Seller     ✓ XU. XUAN ZHI     Purchaser
                           XUAN ZHI XU

**Attorney for Seller:**          **Attorney for Purchaser:**
JOAN A. SOARES             JEFFREY J. KUAN

Address: 118-35 QUEENS BLVD., SUITE 1515     Address: 401 BROADWAY, SUITE 606
FOREST HILLS, NEW YORK 11375               NEW YORK, NEW YORK 10013

Tel.: (718) 575-2225     Fax: (718) 575-2228     Tel.: (212) 343-9072     Fax: (646) 351-0418

Receipt of the Downpayment is acknowledged and the undersigned agrees to act in accordance with the provisions of Paragraph 6 above.

_____
Escrowee

### Contract of Sale

TITLE NO. _____

TO

JUDICIAL TITLE
YOUR TITLE EXPERTS
550 Mamaroneck Avenue • Suite 202 • Harrison, NY 10528
888 Seventh Avenue • Suite 300 • New York, NY 10106
800-281-TITLE (8485)
Fax: 800-FAX-9396

PREMISES
DISTRICT
SECTION
BLOCK
LOT
COUNTY OR TOWN
STREET NUMBER ADDRESS

Rider Annexed to and Forming a Part
of the Contract of Sale,
dated
5/12 ~~APRIL~~, 2017
between
**FRANCESCA SAMATALLEE ("Seller)**
and
**YAN ZHEN CHEN AND XUAN ZHI XU ("Purchaser")**
for the Premises known as
**108-14 JAMAICA AVENUE, RICHMOND HILL, NEW YORK 11418**

1. In the event the printed portions of the contract of Sale and this Rider appear to conflict, then the terms of this Rider shall supersede the printed portions of the Contract of Sale

2. All stipulations or notices concerning performance or notice of any of the obligations under this Contract may be signed by the respective attorneys for the parties hereto or addressed to them, with the same binding effect as though sent to or signed by the parties themselves.

3. In lieu of the seller providing purchasers with the Property Condition Disclosure Statement the seller will credit the purchaser the statutory sum of $500.00 at closing. The seller does not make any representations as to the condition of the subject premises other than those provided in paragraphs 12 and 16 of the Contract of Sale and those contained in this Rider.

4. The Premises herein are sold subject to any state of facts that an accurate survey may show, provided same does not render title unmarketable. In addition, the Premises herein are sold subject to covenants, easements, conditions, agreements, reservations and restrictions, established of record, zoning laws and building regulations, provided same do not prohibit the maintenance or present use of the structures. Variations between fences, hedges, sheds, walls, curbs, street pavement, driveways and record lines shall not be considered an objection to title. In the event there exists any additions or improvements to the Premises which violate said covenants or restrictions, the existence of any such violation shall not be deemed an objection if the title company will insure that such addition or improvement may remain in its present location.

5. In the event the mortgage to be obtained is in an amount less than called for in the contract, Seller shall have the option of reducing the purchase price by the difference between the mortgage amount called for and the reduced mortgage amount, whereupon the Purchaser shall be obligated to complete this transaction.

6. Supplementing paragraph 8 of the printed portion of this Contract:

    (a) Seller, in his sole discretion, may extend Purchaser's time to obtain a mortgage commitment for a period not to exceed thirty (30) days. In the event Seller elects to extend Purchaser's time to obtain the mortgage commitment, the Purchaser is obligated and bound by such additional time.

(b) This sale and Purchaser's obligation under this Contract are expressly not subject to the sale of Purchaser's current residence or any other real property owned by Purchaser. It is expressly agreed by and between the parties that in the event Purchaser's mortgage commitment contains a provision that it is conditional upon the sale of any real property owned by Purchaser, then this condition in the commitment is deemed null and void and of no effect whatsoever on Purchaser's mortgage commitment and Purchaser's mortgage commitment shall be deemed firm and unconditional;

(c) In addition, should said mortgage commitment be conditioned either directly or indirectly upon the Purchaser's receipt or proof of receipt of a gift, said commitment shall also be deemed firm for purposes of this contract;

(d) Purchaser represents that Purchaser has no judgments outstanding against Purchaser in any Court, nor has Purchaser ever been adjudicated as bankrupt. Purchaser further agrees to satisfy such outstanding obligations as may be required by the lending institution to be satisfied if satisfaction is a condition to the closing of the mortgage. Purchaser has inquired and is familiar with the requirements to obtain the aforesaid mortgage and Purchaser believes he/she has sufficient income to qualify for same. The parties agreed that Seller has relied on these representations as an inducement to the execution of this Contract. Purchaser shall immediately notify Seller upon receipt of the commitment or denial of the application for the commitment; and

*[handwritten insertion: "to the best of Purchaser's knowledge"]*

(e) Seller shall attend the closing at an office designated by Purchaser's lending institution. In the event Purchaser's lending institution shall offer an option or preference to Purchaser for a closing location or choice of attorneys, Purchaser shall select a location or attorney location in Queens County.

7. ~~If this contract is conditional upon the Purchaser obtaining an F.H.A. mortgage, then it is expressly agreed that, notwithstanding any other provisions of this contract, the Purchaser shall not be obligated to complete the purchase of the property described herein to incur any penalty by forfeiture of earned money deposits or otherwise unless the Seller has delivered to the Purchaser a written statement issued by the Federal Housing Commission setting forth the appraised value of the property (excluding closing costs) of not less than $7,000 which statement the Seller hereby agrees to deliver to the Purchaser promptly after such appraised value statement is made available to the Seller. The Purchaser shall, however, have the privilege and option of proceeding with the consummation of the contract without regard to the amount of the appraised valuation made by the Federal Housing Commissioner. The appraised valuation is arrived at to determine the maximum mortgage by the Department of Housing and Urban Development and does not warranty the value or the condition of the property. Purchasers should satisfy~~

themselves that the price and condition of the property are acceptable.

8. Purchaser, at his own cost and expense, shall have ten (10) days from the date hereof to have said Premises inspected for the existence of active termite or other wood destroying insect infestation. If said inspection discloses such an infestation, the Seller shall have the option, at his own cost and expense, to treat said infestation and repair any damage, and provide Purchaser with a one (1) year written guarantee that the Premises are free from active infestation, or Seller shall have the right to cancel this Contract and return all sums paid hereunder, and there shall be no further rights between the parties. If Seller elects to cancel, Purchaser shall have (10) days thereafter to waive this provision and accept the Premises subject to the existing infestation and damage. In the event Seller's attorney does not receive written notice of said infestation and/or damage within fifteen (15) days from the date thereof, then Purchaser shall be deemed to have waived this provision of the Contract.

9. ~~Seller shall have the option to remain in possession of the Premises for a period of seven (7) days after closing of title, provided Seller deposits with his attorney the sum of One Thousand ($1,000.00) Dollars to secure Seller's vacating the Premises within such seven (7) days period in the condition as provided herein. In the event Seller remains in possession after said seven (7) days, the sums of One Hundred ($100.00) shall be forfeited for each day Seller remains in possession beyond said seven (7) days. All adjustments shall be computed as of the closing date or delivery of possession, whichever is later. This paragraph shall survive delivery of the deed until possession of the Premises is delivered to Purchaser.~~

10. In the event that a check given as the down payment is dishonored for any reason by the bank upon which it is drawn, except for Seller's attorney's faulty endorsement, Seller, in addition to any other rights or remedies he may have, may terminate the Contract and Seller shall be relieved and released from all obligations hereunder, liability for brokerage commissions included.

11. The payment due at closing is to be made by good unendorsed certified check or bank check payable directly to the order of Seller or Seller's designee and drawn on a bank which is a member of New York Clearinghouse. Uncertified checks of a funding company or attorney's escrow account checks will not be accepted by seller on account of proceeds due from Purchaser.

12. The acceptance of the deed by Purchaser shall be deemed to be full performance and discharge of every obligation, agreement and representation on the part of Seller to be performed pursuant to, and conditioned in, this contract, except those specifically stated to survive the delivery of the deed.

13. Purchaser shall deliver a written copy of the title report to Seller's attorney *Through a title abstract company*

at least twenty (20) days before the date set herein for closing of title; however, Seller shall be entitled to a reasonable adjournment of the closing, without penalty, to clear any objection in the title report. Notwithstanding anything to the contrary contained herein, Seller shall not be required to bring any action or proceeding or to incur any expense, to render title to the Premises marketable or to remove or cure any objection to title or any violation. In the event Seller is unable to transfer title to Purchaser, for any reason whatsoever, Seller's sole obligation and liability hereunder shall be to refund the Down payment* and upon making such refund, this Contract shall terminate and be of no further force or effect, and neither party shall have any further claims, rights, liabilities or obligations to the other by reason of this Contract. Purchaser may accept such title as Seller may be able to convey, but there shall not be any abatement or reduction of the price or any liability on the part of Seller.

[handwritten margin note: *plus net costs of title examination & survey, if any.]

14. This Contract shall not bind Seller unless and until Seller has signed it.

15. Supplementing paragraph 16(b) of the printed portion of this Contract, Seller shall deliver at closing a certificate of occupancy, certificate of completion or a Letter of Pre-Existing Use, as the case may be, for the Premises, including all structures thereon as they presently exist. However, in no event shall Seller be required to pay any administrative fees relating to the issuance of building permits, fire underwriters certificates, certificates of occupancy or certificate of completion. In the event Seller is unable to provide or procure such certificate of occupancy, certificate of completion or a Letter of Pre-Existing Use, Seller's sole obligation and liability hereunder shall be to refund the Down payment and to reimburse Purchaser for the reasonable cost of any title examination procured by Purchaser, and upon making such refund and, reimbursement, this Contract shall terminate and be of no further force or effect, and neither party shall have further claims, rights, liabilities or obligations to the other by reason of this Contract. Purchaser, however, shall have the right to proceed with the purchase regardless of the production of said certificate or letter.

16. Supplementing paragraph 16(e) of the printed portion of this Contract, normal and expected marks, holes and wall and floor discolorations left behind as a result of the removal of any item(s) of personal property which Seller is entitled to remove shall not be deemed a reason to withhold or escrow any sums hereunder.

17. This Contract shall be interpreted and enforced in accordance with the laws of the State of New York. If any provision of this Contract shall be unenforceable or invalid, the same shall not affect the remaining provision of this Contract and to this end the provision of this Contract are intended to be and are severable.

18. The parties hereto waive trial by Jury in any action, proceeding or counterclaim arising out of this Contract, provided such waiver is not prohibited by any laws of the State of New York. Any action or proceeding

brought by either party hereto against the other, directly or indirectly, arising out of this Contract, shall be instituted in a court in Queens County and all motions in any such action shall be made in Queens County This paragraph shall survive the delivery of the deed.

19. If two or more persons are named as Purchasers herein, any one of them is hereby made agent and attorney-in-fact coupled with interest for the other in all matters of any and every kind or nature with respect to this Contract.

20. The articles of personal property included in this sale, if any, have no separate value, except in conjunction with the Premises, and part of the purchase price is attributed thereto. All such personal property will be delivered to Purchaser at Closing in "as is" condition as of the date hereof, except for reasonable wear and tear between the date hereof and the date of Closing and Seller makes and gives no warranties or representations whatsoever including fitness or operating condition thereof. ✶

21. This contract shall not be assigned without the consent of the Seller.

22. Purchaser taking premises subject to the following tenants:

    First floor tenant - Allan Mangru and Rupert Norman, $2,200 rent, no security deposit, lease (to follow) incorporated hereto by reference;

    Second floor tenant - Nelly Sanchez, $1,586 rent, no security deposit. ✶✶

**IN WITNESS WHEREOF**, the parties hereto have duly executed this Rider to Contract as of the date first above written.

SELLER: _[signature]_

PURCHASER:
✓ YANZHEN CHEN
✓ XU.XUAN ZHI

✶ except that appliances, electrical system, plumbing, heating shall be in working order & roof free of leaks at closing.

✶✶ Seller represents that 2nd Floor tenant is ~~not~~ a Section 8 tenant. Seller further represents that there is no pending litigation between Seller and any past or current tenants, and that all rents & additional rents are paid up to date. Rental adjustments shall be made as though rent paid in full for the month of closing. Original leases ~~& any security deposits of security voucher~~ shall be transferred to purchaser at closing. Seller shall cooperate to transfer rental payments ~~and security voucher by NYC~~ to the purchaser after closing.

AFFIDAVIT OF SERVICE

      Re:    Franchesca A. Samatallee
            U S Bankruptcy Court – Eastern District of NY
            Case No. 17-43721-cec

STATE OF NEW YORK:
                SS:
COUNTY OF SUFFOLK:

      Patricia McIntyre, being duly sworn says:

      I am not a party to the within action, am over 18 years of age, and reside in West Babylon, New York.

      On July 31, 2017, I served the within Notice of Motion For Order Extending Automatic Stay by depositing a true copy thereof enclosed in a post-paid wrapper, in an official depository under the exclusive care and custody of the United States Postal Service via first class mail within New York State, addressed to each of the following persons at the last known address set forth after each name:

SEE ATTACHED LIST

                                                           s/Patricia McIntyre
                                                            Patricia McIntyre

Sworn to before me on
July 31, 2017
s/Sarah M. Keenan
Notary Public
Commission Expires July 7, 2018
No. 4865972

| | | |
|---|---|---|
| Bank of America<br>DES-019-03-07<br>4060 Ogletown/Stanton Road<br>Newark, DE  19714 | CBNA – Home Depot<br>P O Box 6497<br>Sioux Falls, SD 57117-6497 | Chase Card<br>201 N. Walnut St. / DE1-1027<br>Wilmington, DE 19801 |
| Discover Bank Discover Products<br>P O Box 3025<br>New Albany, OH 43054-3025 | Nationstar Mortgage<br>P O Box 199111<br>Dallas, TX 75235 | NYC Water Board<br>P O Box 11863<br>Newark, NJ 07101-8163 |
| PHEAA<br>P O Box 8147<br>Harrisburg, PA 17105 | Valley National Bank<br>c/o Cullen & Dykman<br>100 Quentin Roosevelt Blvd.<br>Garden City, NY  115530 | Michael Macco, Esq.<br>Standing Chapter 13 Trustee<br>2950 Express Drive South<br>Islandia, NY  11749 |